UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

THOMAS HUMPHRIES                          CIVIL ACTION NO. 09-cv-1861

VERSUS                                    JUDGE WALTER

WARDEN, LOUISIANA STATE                   MAGISTRATE JUDGE HORNSBY
PENITENTIARY

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury convicted Thomas Lee Humphries, Jr. ("Petitioner") on two counts of aggravated rape and two counts of molestation of a juvenile in connection with his abuse of his stepdaughters, ages 5 and 7. He received life sentences on each of the rape counts and 12 years on each of the molestation counts. The convictions and sentences were affirmed on direct appeal, State v. Humphries, 927 So.2d 650 (La. App. 2d Cir. 2006), writ denied, 944 So.2d 1284 (La.), and a state post-conviction application was denied. Petitioner now seeks federal habeas relief. For the reasons that follow, it is recommended that his petition be denied.

**Sufficiency of the Evidence**

    **A. The Evidence**

Petitioner and his wife lived in Oil City with several children, including the wife's two daughters, ages 5 and 7, who were fathered by other men. Police officers responded to a call

and found the children living in unsanitary conditions. The older girl, H.F., was placed with Laura Morris, the mother's sister. K.H. was placed with Bobbie Broome, her grandmother.

Ms. Morris testified that her sister, Petitioner, and several children lived in squalor. Tr. 681. The children stunk, were not fed, not required to go to school, and missed critical healthcare appointments. Ms. Morris had told H.F., during one of many visits before the child came to live with her, that she could share things with her without them being reported back to her mother. The child confided that a burn on her face was caused by her mother with a curling iron. Ms. Morris then made it a habit to always ask H.F. if anything had happened to her that she wanted to talk about. Ms. Morris was taking the child to get her hair cut one day when she made that inquiry. The girl looked down and seemed frightened. Ms. Morris assured her that she would not be in trouble, and H.F. said that Petitioner had touched her and made her touch him. Ms. Morris had some training in sexual abuse matters and did not inquire further into details. She contacted the sheriff, which triggered the investigation. At the sheriff's station, H.F.'s mother hit her in the chest and said, "I guess you get what you want. You can go live with your Aunt Laura."

H.F. was interviewed by Wendy Westerman, a forensic interviewer at the Gingerbread House, a non-profit agency that assists law enforcement and child protection services when they are investigating abuse cases. The recorded interview was played for the jury (Tr. 599, 658), but the court reporter did not transcribe it. A transcript from the investigative file is, however, in the record at Tr. 91.

H.F., using toot toot to describe the genitals, told the investigator that Petitioner put his toot toot in her mouth, made her put her hands on it, and put it in her butt. She said he did these things often. H.F. was 10 years old and in the fourth grade by the time of trial. She took the stand, watched the video of her earlier interview, and confirmed that it was accurate. She also described digital penetration, Petitioner making her touch his private parts, Petitioner placing his mouth on her private parts, and an incident in a car where he lay on top of her and put his privates on hers. She said he had also put his private part in her butt. Tr. 717-76.

After the indication of abuse of H.F. came to light, her younger half sister, K.H. was also interviewed at the Gingerbread House. In her first interview on October 11, 2002, she said that she "went to the state" because her daddy was not being nice. She said he had touched her on her "front end" with his hand and told her not to tell anybody. She said there were other things she did not tell the investigator because she did not want to talk about them. The investigator suggested they talk again another day. Tr. 123-43. K.H. was interviewed again four days later. She repeated that her daddy had touched her on her front side through her clothes but did not suggest any other misconduct by him. Tr. 144. K.H. was interviewed a third time a few weeks later, in December 2002. Tr. 176, 184-94. She told the investigator that Petitioner had used his hands to hurt her in her front part between her legs, which she sometimes called her toot toot. She said Petitioner had pulled her clothes off, pulled down his pants, and she could feel his front part between her legs as he moved up and

down. He said not to tell anyone because it was secret, but K.H. said she knew she would tell because she hated him.

K.H. also testified at trial. Tr. 779. The child, who was then age seven and a second grader, was shown a bit of the recording of her interview at the Gingerbread House that was made more than two years earlier. She said she remembered going there and talking to someone, but she did not remember the content. When asked about what Petitioner had done to her, she described being in bed asleep when he came in the room and touched her on her back. She denied that any of her clothes were pulled off at the time. When asked if there were any other incidents, she said that he hurt her the next day while her mother was vacuuming in another room. She said Petitioner placed his hand on her private, but only on the outside. She denied that he put any of his fingers inside her, but she said it physically hurt. She denied that Petitioner ever put his private in her private.

Dr. Deborah Brown, Ph.D., a counselor at the Gingerbread House, testified about a counseling session with K.H. The child told Dr. Brown at the beginning of a session that she had a secret to tell but wanted to wait until the very end. Tr. 854. As they were finishing, Dr. Brown said she needed to speak with K.H.'s grandmother about the next appointment. K.H. said she wanted her grandmother to stay out of the room because she wanted to tell the secret. K.H. then told Dr. Brown that her daddy, Tom, had hurt her "very, very bad in her private area," and she didn't want to talk about it. Dr. Brown suggested she share this with Wendy, the interviewer, and K.H. said that she knew she should. Dr. Brown said that it is

difficult for young children to disclose such matters. About 75% of them don't disclose in the first year because they think it is their fault, are ashamed, or are scared.

Dr. Jennifer Rodriguez, a board certified pediatrician, testified that she examined H.F. Tr. 863. When she entered the room and introduced herself, she asked the child why she was there. H.F. said she was there to see the doctor because daddy touched her in a place that was wrong. During the exam H.F. said that Petitioner touched a part of his body to her mouth. Dr. Rodriguez's physical examination of the private areas indicated a healthy hymen and no lacerations, bruises, or tears. She said the lack of injury did not show abuse did not occur. Some children are not hurt during abuse, and some heal quite well. She testified that there is a well known article that states that there will be a normal exam in 80% of child abuse cases. She said this came as quite a surprise to her as she learned the field.

Dr. Ann Springer, a pediatrician at LSU-HSC, testified that she has examined sexually abused children at the rate of 800 to 1,000 a year since 1991. Tr. 876. She examined K.H. on October 10, 2002. The physical exam was basically normal beyond the genital exam, which found a healed laceration of the hymen at the twelve o'clock position. Immediately above that area was the urethra, which was abnormally large. The child did not have any anal injuries.

Dr. Springer testified that the damage she found was not, in her opinion, done through ordinary activities of a five-year-old child. It was indicative of something being forced into the area. She also discussed a study of over 100 girls who had a perpetrator who was convicted of or confessed to penetration, but 80% of the girls had normal examinations. She

knew from personal experience of rapists actually being caught in the act, but the child's physical examination results were normal.

### B. Elements of the Crimes

Petitioner was charged with aggravated rape of each girl. That crime is defined in La. R.S. 14:42 as a rape committed upon a person where the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under certain circumstances, one of which is when the victim is under the age of 12 (now 13) years. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime. La. R.S. 14:41(B).

Petitioner was also charged with molestation of a juvenile, defined in La. R.S. 14:81.2 as "the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile."

### C. <u>Jackson</u> and Section 2254

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 99 S.Ct. 2781, 2789 (1979). "[I]t is the responsibility

of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012).

### D. Analysis

Petitioner argues here, as he did on direct appeal, that the "only evidence" he committed crimes against H.F. was the child's testimony, given her lack of physical injury when she was examined. He concedes that H.F.'s taped statements and trial testimony were compelling but challenges the "stories" as not true. Under Jackson, however, "the assessment of the credibility of the witnesses is generally beyond the scope of review." Schlup v. Delo, 115 S.Ct. 851, 868 (1995).

With respect to K.H., Petitioner admits that K.H.'s third interview at the Gingerbread House and the testimony of Dr. Springer support guilt, but he attacks both sources of evidence. He contends that K.H. must have been coached because it was only in the third

interview that she began to refer to her front part as her toot toot. The child said during the interview that she sometimes referred to her front part as her toot toot. Tr. 188. That appears to be her only reference to that term. There was nothing to suggest any coaching. In any event, it was the role of the jury to assess the credibility of the child's statements.

Petitioner attempts to undermine Dr. Springer's testimony about the healed laceration of the hymen based on evidence that K.H. had been prescribed Premarin cream that had to be applied daily to her vagina. Petitioner states that Dr. Springer's testimony is unreliable because she did not know of this medical history. Dr. Springer testified, however, that she had reviewed K.H.'s medical records before she testified and was aware that a daily estrogen cream had been prescribed based on comments of the grandmother about the condition of the child's vagina. Dr. Springer testified that the treatment of the condition, which apparently arose a couple of years before the abuse came to light, would not have caused the injuries that she observed in the examination. Tr. 889-91. The grandmother, Ms. Broome, testified that she took K.H. to the doctor in January of 2000 after the child said her toot toot hurt. The child would pick at herself before she went to the bathroom. The doctor prescribed Premarin cream, which Ms. Broome applied inside the child's vagina each day. Tr. 803-12. There was no indication that the medicine was still being applied almost three years later when Dr. Springer conducted her exam.

The jury heard all of this information, and it chose to credit the combination of the child's statements and Dr. Springer's testimony to return a verdict of guilty. The state appellate court, when it reviewed the verdict, set out the elements of the crimes, described

the proper Jackson standard, and reviewed the relevant trial evidence. It noted the direct testimony of the victims that indicated penetration and other acts sufficient to constitute the charged crimes, with the victim's statements supported by the testimony of the experts. One might find room to argue various points if this case were again before the jury, but it cannot be said that the state court's review of the jury's verdict was an objectively unreasonable application of the deferential Jackson standard. There is, therefore, no basis for habeas review on this claim.

**Juvenile Conviction**

Petitioner was convicted in juvenile court, when he was 14, of the forcible rape of his younger sister. Louisiana Code of Evidence article 412.2 provides that when an accused is charged with a crime involving a victim under 17, evidence of the accused's commission of another sexual offense may be admissible and considered for its bearing on any matter to which it is relevant, subject to the balancing test in Article 403. The State filed a pretrial notice that it intended to use evidence of the prior crime at trial. Tr. 370. Defense counsel filed a motion in limine and argued against the admission. Tr. 371. The trial judge held a pretrial hearing to receive testimony of the victim and hear argument. She determined that evidence of the prior crime was admissible. Tr. 545-75. C.F., then 27, testified at trial that Petitioner, her oldest brother, vaginally raped her when she was 8 and he was 14. Tr. 661-64.

Petitioner argued on direct appeal (Tr. 970-74) that the trial court erred in allowing admission of the prior act because its prejudicial effect outweighed its probative value. The state appellate court found that the trial court did not abuse its discretion with regard to this

evidentiary ruling. Petitioner raised the same issue in his post-conviction application, with a focus on the fact that the prior act resulted in a juvenile conviction, which he argued was not admissible under state law. Tr. 1091-92.[1] The trial court denied the post-conviction application by quoting from the direct appeal opinion but not focusing on the juvenile conviction aspect of the argument. Tr. 1182-84. The appellate court denied a writ application with a three-sentence order that found no error in the trial court's ruling. Tr. 1291. The Supreme Court of Louisiana denied writs without comment. Tr. 1453.

Federal courts do not grant habeas relief based on mere errors in the application of state evidentiary rules or even consider it relevant whether state evidentiary rules were satisfied. Only federal constitutional errors that satisfy the demanding standards of Section 2254 merit habeas relief. The Due Process Clause provides a mechanism for relief when a state court wrongfully admits evidence, but only if the evidence is so unduly prejudicial that it renders the trial fundamentally unfair. Bigby v. Cockrell, 340 F.3d 259, 271-72 (5th Cir. 2003), citing Dawson v. Delaware, 112 S. Ct. 1093 (1992) and Estelle v. McGuire, 112 S.Ct. 475 (1991). The evidence must have had a substantial and injurious effect or influence in determining the jury's verdict. Wood v. Quarterman, 503 F.3d 408, 414 (5th Cir. 2007).

The trial court considered argument on this issue and found the probative value of the evidence outweighed the danger of undue prejudice. The court agreed to and gave a limiting

---

[1] Petitioner's argument cites LCE art. 609.1(F), which says that evidence of juvenile adjudications of delinquency is generally not admissible under that article, but the article governs impeachment of witnesses who testify at criminal trials.

instruction that Petitioner was on trial only for the offenses charged and could not be found guilty of them merely because he may have committed another offense. Tr. 573-74, 926-27. Petitioner has not shown that the state court erred under its own rules in admitting the evidence. Assuming there was some error of state law, a contention the state courts have now twice rejected, the evidence was not so unduly prejudicial as to render the trial fundamentally unfair. There was ample evidence, apart from the prior crime, to justify the convictions.

The Fifth Circuit denied relief on a similar claim in Wheeler v. Thaler, 347 Fed.Appx. 981, 982 (5th Cir.2009). A convicted molester argued that the state should not have been allowed to introduce evidence that he molested another child. The Court held that a challenge to admissibility under state evidentiary rules did not constitute an independent ground for federal habeas relief. And the admission of the extraneous offense did not violate the federal Due Process Clause if the State "makes a strong showing that the defendant committed the offense and if the extraneous offense is rationally connected with the offense charged." Id., quoting Wood, 503 F.3d at 414.

There is no question Petitioner committed the prior offense; he was convicted. There was also a rational connection between the prior rape of an 8 year old sister and the charged rapes of 5 and 7 year old step-daughters, all committed in the family homes. See also Burd v. Warden, 2012 WL 3709003 (W.D. La. 2012), adopted, 2012 WL 3648334 (W.D. La.) (rejecting similar habeas claim when evidence of prior sex crimes admitted under Article 412.2).

**Ineffective Assistance of Counsel**

 **A. Introduction**

  Petitioner argues that his trial counsel was ineffective because he (1) did not request a mistrial based on admission of the prior crime and admitted the prior conviction, (2) did not seek funds to obtain an expert witness, and (3) rested without presenting defense evidence. To prevail on any of these claims, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

 **B. Juvenile Conviction**

  Defense counsel argued at a pretrial hearing that even if evidence of the commission of the prior sex offense were admitted, evidence of the actual conviction (called an adjudication in juvenile court) should not be admitted. Tr. 567. The trial court agreed with the defense on that point. Tr. 574. The prosecution, consistent with that ruling, did not introduce any evidence of the juvenile adjudication during the direct examination of the prior victim. The defense, however, asked on cross-examination if it was true that Petitioner was convicted of the crime in juvenile court. Tr. 661-67.

  When Petitioner complained in his post-conviction application about how counsel handled the admission of the prior crime, the State filed an affidavit from defense counsel who testified how he filed a motion to prohibit use of the evidence but was unsuccessful. He stated that because the conviction was deemed admissible, the defense attempted to deal with

it by conducting voire dire on the issue and admitting to it in argument, but emphasizing that it did not mean the accused was guilty in this case. Counsel testified that he attempted to deal with the difficult issue as best he could. Tr. 1143-45. The trial court found, based on largely on the affidavit, that counsel was not negligent concerning the issue. Tr. 1184-85. That was the last reasoned state court decision on the post-conviction application.

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

The record does not clearly explain why counsel, after succeeding in excluding evidence of the actual juvenile adjudication, then brought up that evidence himself, but counsel generally states in his affidavit that he developed an overall strategy to try to defuse

Page 13 of 17

the challenging issue. Perhaps counsel wanted the jury to know Petitioner had already been punished for the prior crime. In any event, counsel fought hard to keep out evidence of the prior misconduct, so he cannot be faulted there. It is only with respect to his reference to the actual juvenile court adjudication that there might be some fault, but there is no basis to find actionable prejudice. The sister-victim described the facts of the terrible crime that Petitioner committed. The later mention that Petitioner was adjudicated in juvenile court for his acts could have added but little to the impact of that testimony. Petitioner has not shown that he is entitled to habeas relief on this claim.

### C. Expert Witness

Petitioner faults counsel for not seeking funds to obtain an expert who could counter the testimony of the experts offered by the State. Counsel testified in his affidavit that he attempted to consult an expert in the field of obstetrics, gynecology, and pediatrics but was unsuccessful in doing so. He said he was unsure if such a consultation would have produced evidence to contest the State's experts and, in any event, those experts did not establish that there was any physical evidence of rape or molestation of either child. Rather, the case hinged on the credibility of the victims and their testimony and interview tapes. Tr. 1145-46.

Petitioner quibbles with some of the testimony of the experts and suggests questions that could have been asked about the studies they mentioned, the ability of children to heal, and the like. Petitioner says this testimony should have been challenged by another

pediatrician or expert for the defense. The state court rejected the claim because Petitioner had not shown that an expert for the defense would have changed the outcome of the trial. Tr. 1186.

Petitioner's claim also fails in this court. He must overcome the limitations of Section 2254(d) "on the record that was before the state court." Cullen v. Pinholster, 131 S.Ct. 1388 (2011). It is reversible error for a federal district court to hold a federal hearing to flesh out such an ineffective assistance claim. Pape v. Thaler, 645 F.3d 281, 288 (5th Cir. 2011). The Pape decision reversed a grant of habeas in a molestation conviction; the district had court improperly heard evidence beyond the state record on Strickland claims based on lack of defense experts, uncalled witnesses, and similar claims. There is no factual basis established in the state court proceedings on which this court could find that counsel acted less than competently with respect to this issue or that there was any resulting prejudice.

### D. No Defense Case

The court gave the defense an opportunity to confer after the State rested. Counsel later stated, "We have conferred with Mr. Humphries, and we intend to rest our case. And he is fine without testifying." Tr. 895. Counsel testified in his affidavit that he did not call any witnesses for the defense, but he did cross-examine the State's witnesses, including the victims and Dr. Rodriguez, where appropriate. He said he did not cross-examine Dr. Springer because it might have produced (unspecified) testimony harmful to Petitioner. He added that, before making the decision regarding Dr. Springer, both defense counsel met with Petitioner in a private room during a recess and discussed the matter with him. Tr. 1146.

The state court looked to this record and found Petitioner did not substantiate his claim of ineffective assistance of counsel. Tr. 1186-87.

Once again, Petitioner must establish this claim based on the record that was before the state court. There is nothing in that record to suggest that there were some witnesses or evidence that counsel might have called that would give rise to a reasonable likelihood of a different verdict. This final claim is based on nothing but speculation, so it must be denied.

Accordingly,

**IT IS RECOMMENDED** that the petition for habeas corpus be **denied** and **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 27th day of February, 2013.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE